Wood v. Wood.

4-6511                                    157 S. W. 2d 36

Opinion delivered December 15, 1941.

D. H. Crawford, for appellant.

J. H. Lookadoo, for appellee.

HUMPHREYS, J. W. T. Wood died intestate in 1912 leaving his widow and nine children. In addition to the household goods and some personal property, he left at the time of his death one hundred and forty acres of land, eighty acres of which constituted his homestead, and sixty acres of which had been used and at the time of his death was used in connection with the homestead for the support and maintenance of the family. After his death it was all used by the widow, the appellee herein, and the minor children who were residing with her. No adminis-

tration was had on the estate and no assignment of her dower in the land was ever made by any of the heirs or by the appellant, who bought the other heirs out. Had the assignment of dower in the lands been made to her she would have been entitled to reside on the homestead eighty with her minor children and together enjoy the rents and profits therefrom until the youngest child became of age, after which time she would have been entitled to the possession and enjoyment of the rents and profits for and during her natural life, and to one-third of the total acreage as dower laid out on the other land. She continued to occupy and use the lands as they had always been used until in the spring of 1925. In 1917, the appellant who was the youngest child was inducted into the United States Army and served during the World War. During his absence in the World War the next youngest child, Andrew Wood, and his wife lived with the widow and helped her farm the lands and from time to time purchased the interest of a number of the heirs in said lands. Some of the heirs had made deeds to him which he had never recorded and he had accumulated quite a lot of stock, tools and a car in addition to acquiring the interest of some of the heirs. Appellant, who became of age while he was in the Army, returned after the war, and in 1923 bought the personal property Andrew had accumulated and all the interest in the lands which Andrew had acquired and owned, agreeing to pay him $2,900 for it. Subsequently he bought the interest of the heirs Andrew had not theretofore purchased and, after buying Andrew out, he continued to live on the place with his mother and during that time paid Andrew the balance he owed him. In November, 1924, appellant married and brought his wife to live with appellee. The heirs who had not made deeds to Andrew, as well as those who had made deeds, all executed a deed in 1923 to appellant except Edgar Wood, who did not sign the deed until 1932. The deed was recorded on February 1, 1936. The widow, appellee, did not join in this or any other deed to appellant and vacated the place in the spring of 1925 after it became impossible for her to reside on the place with appellant and his wife, and

went to live at the home of Andrew, where she remained about two years. Thereafter she went to live with her daughter, Mrs. Mary Crowley, until she instituted her suit on February 8, 1941, for possession of the lands and the rents and profits thereon, together with the value of the timber which had been removed from the lands by appellant. She made Thomas Brothers Lumber Company a party defendant to recover the value of the timber which appellant had sold to it.

It filed an answer admitting that it had purchased timber in the value of $2,787.62 from appellant off the land and that it had not yet paid over one-half of the money to appellant and that it was willing to pay the balance due her on the timber into the court for distribution in accordance with his directions.

Appellant filed an answer denying the material allegations of the complaint and alleging that appellee had abandoned the homestead and her right to dower in the lands as well as the rents and profits accruing therefrom and any right to the use of the timber and also alleging that he had acquired all of her interest in the lands by more than seven years adverse possession claiming title thereto.

The trial court heard the case upon the issues joined in the pleadings and the testimony introduced by the respective parties and found that in the spring of 1925 appellant had abused his mother by striking her head against the fireplace until she fell onto the floor when he turned her loose; that about the same time his wife sprinkled some powder over the coffee she was drinking and said that it would be very easy for her to administer poison to her and kill her without anybody ever finding out about it; that the next day she left through fear of her life and went to the home of her son Andrew where she lived for two years, and then went to the home of her daughter, Mrs. Mary Crowley, where she remained until just before she brought this suit; that she did not return or claim her rights or interest in the property because she feared it would result in her death; that her children did not assist her in returning or claiming her rights because

they did not want to incur the enmity of appellant and the most she was able to get some of them to do was to talk to appellant in an effort to get him to take care of her, and this they refused to do; that she did not bring her suit until she understood that appellant had or was denuding the lands of the timber thereon; that appellee did not abandon her interest in the homestead or her dower rights in the lands willingly or voluntarily.

The court also found out of the conflicting testimony that the rents on the lands were of the value of about $50 a year, after taking into consideration the payment of the taxes by appellant and the repairs he had placed upon the property.

The court also found that appellee was entitled to recover the lands for the reason that she had not abandoned the homestead and for the further reason that her dower in the lands had never been assigned to her.

The court also found that she was entitled to a judgment against appellant and Thomas Brothers Lumber Company in the sum of $2,787.62, which amount should be deposited in the registry of the court and loaned out and the interest thereon be paid to appellee during her natural life, after which the principal from the sale of the timber should be paid to appellant.

An appeal by appellant was taken from this decree awarding appellee any rents on the lands or any interest in the money for which the timber was sold.

A cross appeal was prayed and granted to appellee from the amount awarded her as rents and from the refusal of the court to award and adjudge to her the money which had been received from the sale of the timber.

We have examined the testimony very carefully and have concluded that the findings of fact by the court are sustained by a preponderance of the evidence and that the court's decree upon the whole case should be affirmed.

Two main questions are raised on this appeal, one being that a widow's homestead after the death of her husband may be abandoned if she were forced to leave

and prevented by threat from returning thereto, and the other is, whether a widow will be barred by the statute of limitations at the instance of one of the heirs before her assignment of dower therein:

(1) We are unable to find a case, and none has been cited to us, where a son, entitled to the remainder of an estate, who drives his mother from the homestead and through threats prevents her from returning to her home at any time, may plead abandonment as a defense to her right to recover same. We do not think he can. We think abandonment must be predicated upon a voluntary action of the widow and that she cannot be charged with abandonment where she has been driven from her home. We find the general statement in the 26 American Jurisprudence, at p. 121, that "Absence from the premises which is involuntary or compulsory does not constitute a relinquishment of homestead rights."

Her going was more a vacating of the premises for protection than an intention on her part to permanently abandon her homestead rights.

(2) This court ruled that the statute of limitations does not run against a widow in favor of heirs, whose duty it is to assign her dower, in the cases of *Stidham and wife* v. *Mathew,* 29 Ark. 660, *Danley* v. *Danley,* 22 Ark. 263; *Levingston, Adm'r* v. *Cochran,* 33 Ark. 294.

This court also said in the case of *Grober* v. *Clements,* 71 Ark. 565, 76 S. W. 555, 100 Am. St. Rep. 91, that: "It is the duty of the heir to assign dower, and the statute does not usually run against the claim of the widow for dower so long as the heir is in possession by virtue of his inheritance, and we think, under the facts of this case, that the court properly decided that the claim of plaintiff for dower was not barred."

There can be no question but that the widow is entitled to the use of the timber for necessary repairs, etc., and she has a right to use it for those purposes. And, of course, no heir is entitled to denude property in his possession of timber on the land and appropriate the proceeds to his own use when he is in the unlawful possession of the homestead and dower rights of a widow.

It is next to impossible to determine the rental value over a period of years of upland which has no definite marketable rental value. It must be determined more or less from the opinion of witnesses and we are unable to say that the chancery court's allowance for rents is contrary to a clear preponderance of the evidence. We also think the chancery court wisely preserved the principal amount received from the wrongful sale of the timber for appellant with directions that it be loaned out and the interest paid to appellee.

It is about the best solution of the situation that can be suggested or adopted.

No error appearing, the decree is affirmed.